FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 27  PM 4:53

LORETTA G. WHYTE
CLERK

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**RESOLUTION PERFORMANCE PRODUCTS, LLC,**  
      **Plaintiff**

CIVIL ACTION

**VERSUS**

NO. 04-2324

**PAPER ALLIED INDUSTRIAL CHEMICAL AND
ENERGY WORKERS INTERNATIONAL UNION,
PACE LOCAL 4-1201 f/k/a NORCO CHEMICAL
WORKER'S UNION,**  
      **Defendant**

SECTION "T"

### ORDER AND REASONS

Defendant, Paper Allied Industrial Chemical and Energy Workers International Union, Pace Local 4-1201 ("the Union"), filed a Motion for Summary Judgment to enforce a labor arbitration award. Plaintiff, Resolution Performance Products ("RPP"), filed a cross Motion for Summary Judgment to vacate the labor arbitration award. The matter was taken under submission on February 9, 2005. The Court, having studied the legal memoranda submitted by both parties, the Court record, the law, and applicable jurisprudence, is fully advised and ready to rule.

I.      **BACKGROUND**

In November 2000, RPP purchased an Epoxy Resin Unit ("Unit") from Shell Chemical Company ("Shell"). Defendant in this case, a local union, represents employees at the Unit. Operations employees previously employed by Shell transferred their employment to RPP and continued staffing the Unit under the terms of a Collective Bargaining Agreement ("CBA")

Fee _____
Process _____
Dktd _____
CtRmDep _____
Doc. No _____

1

dated July 1, 2000.  Maintenance employees from Shell also continued to work at the Unit, but remained employees of Shell, per the terms of an Interim Labor Services Agreement ("ILSA"). The ILSA terms also stipulated the Shell maintenance workforce would be supplemented by subcontractor maintenance employees.  In July 2001, Shell stopped supplying the maintenance workforce and RPP began employing only subcontractors as its maintenance workforce at the Unit.  The ILSA expired in November 2001 and since then RPP has relied exclusively on subcontractors for its maintenance services.

In response, the Union filed a series of grievances claiming RPP had violated the CBA by failing to employ Union maintenance workers in the Unit.  The Union filed the first grievance in April 2001 and later amended it in July 2001.  After RPP rejected both the first grievance and its amendment, the Union filed a second grievance in September 2001.  RPP rejected this grievance as well, and in January 2002 the Union informed RPP of their intention to arbitrate the matter. After some correspondence between the parties' counsel and a considerable delay, RPP and the Union agreed upon an arbitrator ("Arbitrator") and met for arbitration.

The Arbitrator found: (1) the matter was arbitrable and (2) RPP violated the CBA by using subcontractors to perform the Unit's maintenance work.  The Arbitrator based her decision on an analysis of pertinent CBA provisions, the history of subcontractor work at the Unit, prior arbitration decisions arising out of the old CBA between Shell and the Union, and the effect subcontracting had on the integrity of the bargaining unit.  As a remedy, the Arbitrator ordered RPP to employ Union maintenance workers in numbers comparable to that of the Unit when it was owned by Shell.  RPP has refused to comply with these requirements and the parties have

filed cross motions before this Court, alternatively seeking to enforce or vacate the arbitration award.

## II.    ARGUMENTS OF THE RESPECTIVE PARTIES:

### A.    Arguments of the Union in Support of Enforcing Arbitration Award

Defendant contends the Arbitrator's award draws its essence from the CBA, and therefore, cannot be vacated under the highly deferential standard required for judicial review of arbitration awards.  The Union claims the Arbitrator properly interpreted the CBA when she used an extensive arbitral history to reach a finding that employing subcontractors as the maintenance workforce at the Unit violated the purpose of the CBA.  In making this argument, the Union asserts the Fifth Circuit decision in *Folger* is analogous and should control this Court's decision.  *Folger Coffee Co. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of America-UAS, Local Union No. 1805*, 905 F.2d 108 (5th Cir. 1990).  The decision in *Folger* upheld an arbitration award requiring a company to employ union maintenance workers rather than subcontractors, despite language in the controlling CBA authorizing the company to subcontract.  *Id.* at 111.  According to the Union, *Folger* supports an arbitrator's right to consider not only the contract, but also other sources of law and past practice, when rendering decisions.  *Id.*  The Union argues *Folger* requires this Court to enter an order enforcing the Arbitrator's award.

### B.    Arguments of RPP in Support of Vacating Arbitration Award

While conceding that judicial review of arbitration awards is very deferential, RPP contends an arbitration award must fall within the authority of the CBA.  RPP claims the

3

Arbitrator ignored the plain language of the CBA by: (1) determining the matter was arbitrable and (2) issuing a remedy which contradicts an express contractual provision.  Specifically, RPP argues the Union failed to request an arbitration panel within thirty days as required by the CBA, and therefore the untimely proceedings rendered the grievances non-arbitrable.  RPP also argues the Arbitrator's remedy, which requires the company to hire certain numbers of maintenance employees, directly contradicts a clause in the CBA which states RPP cannot be required to maintain any given number of employees.  RPP claims that when the Arbitrator ignored the plain language of the CBA to award a remedy based on external policies, she exercised an abuse of power that mandates this Court vacate the award.

## III.   STANDARD OF REVIEW

### A.  Summary Judgment

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." *Anderson v.*

4

*Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (emphasis added). Thus, if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**B. Judicial Review of Arbitration Awards**

Judicial review of arbitration awards is extraordinarily limited. An arbitrator is the fact-finder in a matter before her and her findings should be accorded considerable judicial deference. *Local Union 59, Int'l Bhd. of Elec. Workers v. Green Corp.,* 725 F.2d 264, 268-269 (5th Cir. 1984). Thus, a court may not vacate an arbitration award merely because it disagrees with the arbitrator's factual findings, contractual interpretation, or legal conclusions. *Id.* at 269; *Int'l Chem. Workers Union v. Columbian Chems. Co.,* 331 F.3d 491, 495 (5th Cir. 2003). A court must uphold an arbitration award if the decision draws its essence from the CBA. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960). A decision draws its essence from the CBA if it is rationally inferable in some logical way from the CBA. *Int'l Chem. Workers Union v. Day & Zimmerman, Inc.,* 791 F.2d 366, 369 (5th Cir. 1986). Still, an arbitrator is required to act within the scope of her authority as defined in the CBA. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987). An arbitrator may not ignore the clear and unambiguous language of the CBA when issuing an award; therefore, a court may vacate an award if it contradicts the express language of a CBA. *Beiard Industries, Inc. v. Local 2297, Int'l Union,* 404 F.3d 942, 947 (5th Cir. 2005).

## IV.    ANALYSIS

### A.    Is the matter arbitrable?

RPP claims the grievance should not have even reached arbitration because the Union failed to request an arbitration panel with thirty days, as proscribed by the CBA. To determine whether the matter was arbitrable, the Arbitrator reviewed correspondence between the parties' respective counsel regarding the original grievances and the Union's desire to proceed to arbitration. The Arbitrator determined that, given the ongoing nature of the alleged violation and the existence of an Interim Labor Service Agreement, both grievances were timely filed and appealed. The Arbitrator also concluded the delay in proceeding to arbitration was a result of RPP counsel's failure to correspond with Union counsel in a timely fashion. Whether the matter is arbitrable depends on largely factual determinations, and thus the Arbitrator's role as fact-finder should inform this Court's decision. Under the highly deferential standard of review, this Court finds the Arbitrator's conclusions reasonable and affirms her finding that the matter is arbitrable.

### B.    Is the Arbitrator's award authorized by the terms of the CBA?

In response to RPP's second argument, the Union claims *Folger* supports an Arbitrator's authority to use information about past practice and prior arbitration decisions in forming her own interpretation of the CBA. In *Folger*, the controlling CBA stated the purpose of the Agreement was to "promote, improve and strengthen the relationship and good will" between the company and the Union. *Folger,* 905 F.2d at 111. The Fifth Circuit found this provision limited the company's right to subcontract, as provided in another provision of the CBA. *Id.* at 111.

6

Having found the language of the subcontracting clause ambiguous, the Court affirmed the arbitrator's authority to look to other CBA provisions, as well as past practice and other information, to inform his decision. *Id.* However, the Union's reliance on *Folger* is misguided because the RPP-Union CBA has no similar "good will" provision.

The present matter is actually more analogous to the recent Fifth Circuit decision in *Beaird*. *Beaird* involved a company that chose to subcontract for labor in their buildings and grounds department. *Beaird* at 943. The union filed a grievance and the matter proceeded to arbitration. *Id.* An arbitrator ruled in favor of the union, finding the company's decision to subcontract undermined the purpose of the CBA. *Id.* at 943-944. A district court vacated the award and the Fifth Circuit affirmed, noting the Beaird CBA was not ambiguous on the company's right to subcontract and did not contain any explicit provision restricting that right. *Id.* at 946-947. In its analysis, the Fifth Circuit noted the importance of a provision limiting the sole source of the Beaird union's rights to the terms of that CBA. *Id.* at 944-945.

In this regard, the RPP-Union CBA is more similar to the Beiard CBA than the Folger CBA. Importantly, the RPP-Union CBA also provides that its terms constitute the "entire agreement between the parties" and that all unwritten or inconsistent agreements will be inoperative. The only provision which specifically mentions subcontracting discusses subcontractor pay rates rather than RPP's right to employ subcontractors at all. The CBA does contain a provision, however, which states RPP cannot be required to maintain any specific

number of employees in any craft.[1]  This language is clear and unambiguous, and as such, the

Arbitrator should not have considered past practice, prior arbitrations decisions or notions of

fairness when interpreting the clause.  Article III, Section 1(D) of the CBA states RPP cannot be

required to maintain specific numbers of employees in any craft; hence, the Arbitrator's award

requiring RPP to employ a certain number of maintenance workers directly contradicts an

unambiguous provision of the CBA.  When an arbitrator issues an award directly contradicting

an unambiguous provision of the CBA, she has exceeded her authority.  *Beaird*, 404 F.3d at 946.

Therefore, the Arbitrator exceeded her authority under the CBA and this Court must vacate the

arbitration award, even under the highly deferential standard of review.


Accordingly,


**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of the plaintiff,

Resolution Performance Products, be and the same is hereby **GRANTED.  IT IS FURTHER**

**ORDERED** that the cross Motion for Summary Judgment filed on behalf of the defendant,

Paper Allied Industrial Chemical and Energy Workers International Union, Pace Local 4-1201,

be and the same is hereby **DENIED.**

---

[1]Article III, Section 1 of the RPP-Union CBA reads, in pertinent part:
>       (D)  Nothing herein shall require the Company to adjust or maintain any given
>       number of craftsmen in any craft.

New Orleans, Louisiana, this 27th day of July, 2005.

**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**